USDC SCAN INDEX SHEET










RYC    1/26/06    14:54

3:05-CV-02299    PURE BIOSCIENCE V. FALKEN INDUSTRIES

*7*

*M.*

Joel S. Seidel, SB #175275
10325 Aldea Avenue
Granada Hills, CA 91344
Tel: (818) 832-7850
Fax: (818) 832-7889

Attorney for Respondent Falken Industries

**NUNC PRO TUNC**

JAN 24 2006

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PURE BIOSCIENCE, f/k/a Innovative Medical Services, <br><br> Petitioner, <br><br> vs. <br><br> FALKEN INDUSTRIES, LTD., a New Jersey corporation, <br><br> Respondent. | CASE NO. 05 CV 2299 <br><br> **FALKEN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Date: March 13, 2006 <br> Time: 11:00 a.m. <br> Courtroom: 4 <br> (No oral argument except as requested by Court) |

Respondent, Falken Industries, Ltd., by its attorney, moves this Court under Fed. R. Civ. P. 12(b)(2).

///
///
///
///
///
///
///
///

1

Falken's Motion To Dismiss For Lack Of Personal Jurisdiction

05 cv 2299

## Introduction

Pure Bioscience instituted this action by filing on December 16, 2005, and this lawsuit was served on Falken by personal service.

As set forth in the Affidavit of Helle Madso, attached as **Exhibit 1**, Falken is a New Jersey corporation with its principal place of business in France, has no offices, bank accounts, or other property in California, does not conduct business in California, and has never through any of its employees even been in California, except in connection with litigation instituted by Pure.

## Argument

### I. THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER FALKEN

In determining whether a California federal court has personal jurisdiction over a non-resident defendant, the court applies federal due process rules, even if the court's subject matter jurisdiction is based on diversity, because "California's long-arm jurisdictional statute is coextensive with federal due process requirements." Accordingly, "the jurisdictional analyses under state law and federal due process are the same," Schwarzenegger v. Fred Martin Motor Co., 2004 WL 1462444 at *3 (9th Cir. 2004), and the Court may exercise jurisdiction over Falken only if, as set forth in International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), it has "at least 'minimum contacts' with [California] such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice,'" Schwarzenegger, 2004 WL 146244 at *3.

In addition, the contacts may be sufficient to support general personal jurisdiction, in which case the defendant may "be haled into court in the forum state to answer for any of its activities anywhere in the world," if the defendant has engaged in "'continuous and systematic general business contacts' that 'approximate physical presence' in the forum state." Schwarzenegger, 2004 WL 1462444 at *3 (citations omitted). Alternatively, the contacts may provide specific personal jurisdiction for a claim arising out of the contacts if he "directed his activities" or "purposefully availed himself of the privilege of conducting activities in the forum. Schwarzenegger, 2004 WL 1462444 at *4. Moreover, "only the defendant's purposeful activities in the forum state, and not the

2

plaintiff's actions, can justify the exercise of jurisdiction." Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica, 614 F.2d 1247, 1251 (9th Cir. 1980).

As set forth below, however, Falken does not conduct any business in California.

### A. As Falken Does Not Conduct Any Business In California, The Court Does Not Have General Personal Jurisdiction Over Falken

The Ninth Circuit in Schwarzenegger characterized the contacts necessary to support general jurisdiction as an "exacting standard" and cited cases for the proposition that (1) while doing business in California may support general jurisdiction, doing business with California will not. Schwarzenegger, 2004 WL 1462444 at *3 (citing Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000)), and (2) "'mere purchases, even if occurring at regular intervals, are not enough' to establish general jurisdiction," id., (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 418 (1986)). Thus, the court held that the defendant there, an Ohio car dealership that ran an ad with a picture of Arnold Schwarzenegger in a locally-circulated Ohio newspaper, Schwarzenegger, 2004 WL 1462444 at *1, "failed to establish a prima facie case of general jurisdiction" even though: (1) it regularly bought cars from Illinois and New Jersey sources that had been imported by California entities, (2) some of its contacts with auto suppliers included California choice-of-law provisions, (3) it used California based direct-mail marketing and sales training companies, and (4) it maintained a website accessible to anyone, including people in California, Schwarzenegger, 2004 WL 1462444 at *3. See also VCS Samoa Packing Co. v. Blue Continent Prods. (PTY) LTD., 83 F. Supp. 2d 1151, 1153-54 (S.D. Cal. 1998) (defendant had no "continuous or substantial contact" with California where its contacts consisted of "communications incident to the contract at issue" with the California plaintiff for the delivery of tuna to plaintiff in

3

American Samoa and a series of contracts with another California party for delivery of goods outside California).

There can be no dispute as to whether the Court has general jurisdiction over Falken because, as set forth in the affidavit of Helle Madso, Falken does not conduct any business in California. Indeed, Falken has only existed since last August 2003 and does not have any offices, agents, activity, property, or bank accounts in California, and no Falken representative has ever been in California on Falken business, except as it related to litigation with Pure, in which Falken was required to send a representative to a pre-trial conference and to attend the arbitration proceeding before Arbitrator Fitzmaurice in August 2005. There is therefore no basis to conclude that Falken has engaged in "continuous and systematic general business contacts" that "approximate physical presence" in California, let alone some attenuated business contact, such as that in Schwarzenegger and VCS Samoa, that would be insufficient to satisfy the minimum contacts requirement.

**B. As Falken's Contact With The Core Settlement Agreement At Issue Here Has Been Exclusively With A Florida Party, The Court Does Not Have Specific Personal Jurisdiction Over Falken**

The Ninth Circuit has "established a three-part test for analyzing a claim of specific personal jurisdiction" in contract cases:

> (1) The non-resident defendant must . . . perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;[1]
> (2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) The exercise of jurisdiction . . . must be reasonable.

---

[1] In tort suits, the court applies a "purposeful direction analysis" whereby a determination is made as to whether the defendant "purposefully direct[ed] his activities or consummat[ed] some transaction with the forum or resident thereof . . . ." Schwarzenegger, 2004 WL 1462444 at *4.

4

Falken's Motion To Dismiss For Lack Of
Personal Jurisdiction

05 cv 2299

Schwarzenegger, 2004 WL 1462444 at *4. Thus, "the determination of specific jurisdiction is a conjunctive test" which "turns on an evaluation of the nature and quality of the defendant's contacts in relation to the cause of action.'" VCS Samoa, 83 F. Supp. 2d at 1154. Moreover, "[t]he plaintiff bears the burden of satisfying the first two prongs," generally by "evidence of the defendant's actions in the forum, such as executing or performing a contract there." Schwarzenegger, 2004 WL 1462444 at *4 (emphasis added).

These principles were applied in VCS Samoa, where the plaintiff, a California packing company, contracted with a non-resident supplier by means of fax and telephone communications between defendant in South Africa and plaintiff in California to deliver tuna from South Africa to American Samoa. Plaintiff rejected the delivery and the parties again exchanged faxes "to determine how they would handle the allegedly non-conforming tuna." 83 F. Supp. 2d at 1152. The court rejected the California plaintiff's contention that defendant was subject to personal jurisdiction in California because it "corresponded with plaintiff's office in San Diego [and thus] should have foreseen that its conduct would have an effect in [California]" because "[f]oreseeability alone . . . is not [a] 'sufficient benchmark for personal jurisdiction under the Due Process Clause.'" 83 F. Supp. 2d at 1154 (citation omitted).

Moreover, the court added, "merely entering into a contract with a party who resides in the forum, in itself, is not sufficient to establish jurisdiction." 83 F. Supp. 2d at 1154. The court found that the non-resident defendant "did not purposefully avail itself of 'the privilege of conducting activities within the forum state thus invoking the benefits and protections of its laws'" because it "did not reach out to California to obtain [the] business," the business was not directed to California as defendant shipped the product to American Samoa, and "[a]lthough defendant corresponded with

5

plaintiff's San Diego office by facsimile and telephone, the mere 'use of interstate facilities, such as telephones or mail cannot alone provide the "minimum contacts" required by due process.'" 83 F. Supp. 2d at 1155 (citation omitted). See also Thos. P. Gonzalez Corp., 614 F.2d at 1253 ("It is not sufficient that the plaintiff is a California resident . . . or that an act outside California imposes an economic burden on a California resident").

Thus, communications with and entering into a contract with a California plaintiff is insufficient to establish jurisdiction over a non-resident defendant. Here, where the California plaintiff brings suit for breach of contract, there would be an issue as to whether the party with whom the plaintiff contracted, i.e. Nickel, was subject to jurisdiction in California if suit had been brought against it. The defendant, however, i.e. Falken, did not enter into a contract with plaintiff Pure Bioscience and therefore never had any communications with Pure Bioscience in connection with the negotiations for or execution of the contract, so that even if fax and telephone communications with the California plaintiff were sufficient, they did not occur here.

Instead, Falken was alleged to be the alter ego of Nickel, another New Jersey corporation that had its principle place of business in Paris, France.

In earlier litigation between Pure and Falken, this Court determined that personal jurisdiction existed over Falken in part because Falken was equitably estopped from denying the applicability of the arbitration agreement in the Core Settlement Agreement, and under existing Ninth Circuit law, an assignee of a contract is deemed to have consented for purposes of minimum contacts to the jurisdiction of the forum. See Memo Op. at 27 (January 4, 2005). However, this suit is not brought pursuant to the Core Settlement Agreement, so that prong of the Court's earlier analysis is irrelevant to the instant motion.

Falken is not unmindful that this Court indicated that by applying Calder v. Jones, 465 U.S. 783 (1984), that Falken could be constitutionally hailed into California if its wrongful conduct was aimed specifically at Pure. See Op. at 27-28. Here, however, Pure's claim for injunctive relief relates to the very same claims that Pure had made against Falken pursuant to the Core Settlement Agreement and those claims are res judicata as a result of the arbitral award entered by Arbitrator Fitzmaurice, which Pure has sought to confirm in its October 25th petition, case number 05 CV 2020. Thus, those alleged acts cannot be the predicate for the exercise of specific personal jurisdiction over Falken, as this case purports to relate to a licensing agreement between Pure and Nickel. Further, Pure's trade libel claim, which was a basis for the Court concluding that it had personal jurisdiction over Falken in the earlier litigation does not withstand scrutiny. Of the three allegedly defamatory articles, two related to announcements made by Nickel, not Pure. See Exhibits D and E. And while Exhibit C was an announcement by Falken, the announcement was in the context of a press release, which announced that Falken had obtained a judgment against Nickel for EUR 8,800,000.00. A copy of that press release is attached as **Exhibit 2** to this Memorandum. A truthful announcement, which as a public company Falken would be required to make in any event, hardly constitutes the kind of malicious, willful activity that would permit California to hail a French company, which does no business in California, and which made an announcement in Paris, to come to California to defend Pure's wide ranging action against it.

///

///

///

///

7

Falken's Motion To Dismiss For Lack Of
Personal Jurisdiction

05 cv 2299

## Conclusion

For the reasons set forth above, Falken Industries Ltd. requests that this Court grant its motion to dismiss for lack of personal jurisdiction.

FALKEN INDUSTRIES, LTD.

By _____

Its Attorney

Joel S. Seidel, SB #175275
10325 Aldea Avenue
Granada Hills, CA 91344
Tel: (818) 832-7850
Fax: (818) 832-7889

Dated: January 24, 2006

8

## Table of Contents of Exhibits

Exhibit 1          1/20/06 Madso affidavit

Exhibit 2          10/24/05 Falken Industries, Ltd. Press Release

10

Falken's Motion To Quash Service
And Dismiss For Lack Of Personal Jurisdiction

04 cv1147

# EXHIBIT 1

## AFFIDAVIT

Helle A. Madso declares the following under penalty of perjury:

1. That she is the President Europe of Falken Industries Ltd;

2. That Falken was incorporated in the State of New Jersey on August 6, 2003;

3. That Falken does not have any offices, commercial representation, activity, property, bank accounts, etc. in California;

4. That no representatives of Falken have ever been in California on Falken business, except for my attending by order of Arbitrator Fitzmaurice, the arbitration hearing between Pure and Falken, where Falken was a respondent and when Falken was required to attend a settlement conference by the magistrate;

5. That Falken does not currently and has never in the past done business or conducted any business in California;

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 20, 2006.

*/s/ Helle A. Madso*
Helle A. Madso

EXHIBIT 2

# FALKEN Industries Ltd Recovers Judgment of EUR 8,800,000.00

PARIS--(BUSINESS WIRE)--Oct. 24, 2005--FALKEN INDUSTRIES LTD - today announced that it had recovered a EUR 8.800.000,00 judgement against NICKEL LTD with permission to pursue by subrogation, enforcement against PURE BIOSCIENCE (Formerly INNOVATIVE MEDICAL SERVICES "IMS") (OTC:BB PURE).

Nickel, stated that it had signed its litigated supply agreement with Falken in reliance upon a contract signed by it with PURE, and that it was compelled to default with Falken as a result of PURE's continued failing or inability to deliver Axen concentrate or dilution. Nickel also stated that its total claims against PURE including for breaches of its exclusivities, exceeded EUR 38.500.000,00 ($ 46.500.000,00) in unambiguous contract claims, and that amount again in consequential damages. These claims will be pursued in three separate lawsuits.

Nickel advised today that in accord with leave granted it by the Paris High Court on March 25, 2005, it had commenced, filed and served on an accelerated basis in Paris France, the first of two lawsuits. The first suit against PURE seeks damages exceeding EUR 12,500,000 ($15.250.000,00) for lost margins on required purchases and for an additional and undetermined amount including for breaches of the non-compete provisions. The second lawsuit claiming direct damages in excess of EUR 14.500.000,00 ($ 17.690.000,00) is expected be filed and served within ten days, and documents additional claims against PURE for its managerial failures of a joint venture, Pure had admitted its contractual obligations in SEC filings, and had confirmed Nickel's exclusivities and performance of the contract in its own press release(s).

The jurisdiction of the French courts was heavily contested by PURE in an earlier court proceeding, but on March 25, 2005, the French Court ruled against PURE and confirmed its exclusive jurisdiction to adjudicate the matters and PURE did not appeal.

Attorneys representing Nickel, said ;"Under the two Agreement(s) PURE is specifically prohibited from any competing activity in the United States, and required to make minimum purchases and meet development objectives in the United States all of which it has refused to do."

ABOUT FALKEN INDUSTRIES LTD

Falken Industries Ltd. is a leading manufacturer of innovative wet wipe and other products. Its core product group is the Clean Plus(R) brand of high performance products - www.cleanplus.com through which it ensures the development and commercialisation of specialty cleaning and maintenance products for consumer and industrial applications.

Through its production associate in St Pierre les ElBeuf (FRANCE), Falken also pursues the production and development of its non-competing private label business which contributes materially to economies of scale in raw materials costs.

Clean Plus(R) Auto Care(R) is a recognized success by both clients and competitors due to its unique market positioning, high quality, and price advantage. In February 2005, the company launched its Handyman(R) product group aimed at the consumer DIY market segment.

Distribution is ensured through Falken's unique "Super Distribution" concept. Super Distribution Agreements provide successful distributors with a contractual exclusivity for a given geographic area and market segment.

Currently, the Clean Plus(R) and related product lines are sold throughout Europe and in many other countries. The company introduced its product line in the United States in November 2004, and expects to launch that market in 2006. The Company's clients include: the largest distribution networks in the automotive sector, major gasoline station chains, exclusive retail auto aftermarket chains in Europe with hundreds of stores in six European nations. The Company also sells to government agencies and a large number of national and multinational firms.

All products are sold in multiple languages and are manufactured to service the whole of the European and North American market. Consumer products are manufactured in different editions, i.e., NE Northern European (Finland, Norway, Sweden, Denmark and the UK); CE Central Europe (Belgium, Holland, Luxembourg and Germany); SE Southern Europe (Portugal, Spain, Italy, Greece and Cyprus); US (United States & South America) and C(Canada, and the Commonwealth Countries). Languages, versions and models are created as the company expands its Super Distribution network.

The Clean Plus(R) line of products is divided into 2 segments, the consumer line and the professional line.

This press release includes statements that may constitute "forward-looking" statements, usually containing the words "believe", "estimate", "project", "expect" or similar expressions. These statements are made, to the extent relevant, pursuant to the safe harbor provisions of the Private Securities Litigation Reform Act of 1995. Forward-looking statements inherently involve risks and uncertainties that could cause actual results to differ materially from the forward-looking statements. Factors that would cause or contribute to such differences include, but are not limited to, acceptance of the Company's current and future products and services in the marketplace, the ability of the Company to develop effective new products and receive regulatory approvals of such products, competitive factors, dependence upon third-party vendors, and other risks. By making these forward-looking statements, the Company undertakes no obligation to update these statements for revisions or changes after the date of this release.

**Contacts:**

FALKEN Industries Ltd
Rishard Lebbe
Assistant Vice-President Communications
Phone: +331 4542 1916
rlebbe@falkenltd.com

BusinessWire

## Proof of Service

The undersigned attorney for Falken certifies that he served a copy of the foregoing motion and memorandum on the following counsel of record for petitioner Pure Bioscience by placing a copy in a properly addressed, postage prepaid envelope and depositing it in the U.S. mail in Northridge, California on January 24, 2006:

Wolfgang F. Hahn  
Wolfgang F. Hahn & Associates  
7160 Caminito Pepino  
La Jolla, CA 92037  
Fax: (858) 456-5080

Charles E. Brumfield  
C/o Pure Bioscience  
1725 Gillespie Way  
El Cajon, CA 92020  
Fax: (619) 596-8700

_____  
Joel S. Seidel

9

Falken's Motion To Dismiss For Lack Of  
Personal Jurisdiction

05 cv 2299